UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TERRENCE L. LOVETT,                        )
                                           )
        Plaintiff,                         )
                                           )
    v.                                     )        No.   4:11CV1271 RWS
                                           )                     (TIA)
MICHAEL J. ASTRUE,                         )
COMMISSIONER OF SOCIAL SECURITY,           )
                                           )
        Defendant.                         )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

        This cause is on appeal from an adverse ruling of the Social Security Administration.  The

case was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. §

636(b).  The suit involves an Applications for Disability Insurance Benefits under Title II of the

Social Security Act and Supplemental Security income payments.

## I.    Procedural History

        Claimant Terrence L. Lovett filed Applications for Disability Insurance Benefits under

Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 133-50)[1] and Supplemental Security Income

payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. (Tr. 130-

32).  Claimant states that his disability began on May 1, 2006, as a result of bipolar disorder and

schizophrenia.  (Tr. 162).  On initial consideration, the Social Security Administration denied

Claimant's claims for benefits.  (Tr. 72-76).  Claimant requested a hearing before an

Administrative Law Judge ("ALJ").  (Tr. 51-52).  On September 29, 2009, a hearing was held

---

[1]"Tr." refers to the page of the administrative record filed by the Defendant with its Answer
(Docket No. 10/filed October 5, 2011).

before an ALJ.  (Tr. 33-64).  Claimant testified and was represented by counsel.  (Id.).

Vocational Expert Vincent Stock also testified at the hearing.  (Tr. 58-63, 128-29).  Thereafter, on

May 19, 2010, the ALJ issued a decision denying Claimant's claims for benefits.  (Tr. 10-28).  On

May 25, 2011, the Appeals Council found no basis for changing the ALJ's decision and denied

Claimant's request for review of the ALJ's decision.  (Tr. 1-3).  The ALJ's determination thus

stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

## II.    Evidence Before the ALJ

### A.  Hearing on September 29, 2009

#### 1.  Claimant's Testimony

At the hearing on September 29, 2009, Claimant testified in response to questions posed

by the ALJ and counsel.  (Tr. 35-58).  Claimant's date of birth is September 7, 1975.  (Tr. 36).

At the  time of the hearing, Claimant was thirty-four years of age.  Claimant testified that he is a

junior in college.  (Tr. 36).  Claimant stands at six feet five inches and weighs 215 pounds.  (Tr.

37).  Claimant is right-handed.  (Tr. 37).  Claimant has five children ages two to thirteen who live

with their mothers, and he sees the children on the weekends.  (Tr. 50-51).  Claimant plays video

games with the children and takes them to the park.  (Tr. 51).

Claimant lives with his auntie and attends Fontbonne University part time.  (Tr. 48-49).

Claimant is taking eight hours and is a sociology major and a theater minor.  (Tr. 49).  Claimant

has a 2.54 average on a 4.0 scale.  (Tr. 49-50).  Claimant failed one class in four years.  Claimant

has student loans, scholarships, and grants.  (Tr. 50).

Claimant last worked a couple hours a week in the summer doing janitorial work at

Fontbonne University.  (Tr. 37, 53).  Claimant testified that he worked seven years as a bill

collector calling people and asking them to pay money.  (Tr. 37-38).  Claimant also worked as a personal trainer, a cook at a fast food restaurant, and a buser in a restaurant.  (Tr. 38).  Claimant left the buser position after three months after having a disagreement with his boss.  (Tr. 38-39).  Claimant left the job as the lead cook at Hardees due to the stress on a daily basis.  (Tr. 39).  Claimant worked for one year in customer service in an office environment at Express Scripts taking phone calls.  (Tr. 40).  The whole call center was laid off in 2005.  Claimant worked as a bill collector for five years.  (Tr. 40).  Claimant testified that either he becomes tired of going to work, or he does something to be fired.  (Tr. 41).

Claimant testified that in 1998 he became involved in spirituality, meditation, and fasting. (Tr. 42).  Claimant experiences physical pain in his head every day.  (Tr. 45-46).  Claimant started treatment at Hopewell Clinic in 2002, and he has received medications but none work.  (Tr. 46). Claimant testified that the medications cause him to be sleepy.  (Tr. 47).  Dr. Mudasani first treated Claimant and then Dr. Gonzales who prescribed Risperdal.  (Tr. 47).  Claimant has never been hospitalized.  (Tr. 48).  Claimant testified that he is healthy as a horse.  (Tr. 48).  Claimant testified that he still hears voices, and Risperdal does not help his symptoms.  (Tr. 51). Claimant testified that a sitting desk job would be difficult for him.  (Tr. 53).  Jobs that require him to be on his feet moving around helps Claimant.  Claimant testified that he could work full time as a janitor for a while, but then he would start calling in sick and missing days.  (Tr. 53). Claimant does not agree with his diagnosis of schizophrenia, but instead thinks he is going through some spiritual evolution.  (Tr. 53-54).  Claimant testified that he does not think he has a mental problem.  (Tr. 54).  Working out helps Claimant stay balanced.  (Tr. 56).

On a bad day, Claimant testified that the noises are louder, the lights are brighter, and everything is enhanced. (Tr. 54). Hitting himself on the side of the head helps Claimant center himself. (Tr. 54). Claimant testified that he does not experience bad days as much as he did in the past. (Tr. 55). Claimant experiences bad days once or twice a week. (Tr. 55).

## 2. Testimony of Vocational Expert

Vocational Expert Vincent Stock, a licensed psychologist and vocational rehabilitation counselor, testified in response to the ALJ's questions. (Tr. 58-63). Dr. Stock opined that just because somebody carries the diagnosis of schizophrenia in and of itself does not prevent the individual from functioning on jobs. (Tr. 59). Dr. Stock explained that the severity of the symptoms and the ability to control the symptoms with medication or therapy or both determines whether the individual can function on jobs. (Tr. 59). In general, the symptoms preventing a schizophrenic from working are the lack of focus and concentration, the inability to follow directions, the inability to show up on time and be reliable, the necessity of having an extra break, and the creating of a distraction to others due to behavior. (Tr. 60). Dr. Stock opined a schizophrenic's internal chaos sometimes creates behavior noticeable to others, and sometimes supervisors have difficulty knowing how to communicate. (Tr. 60). Dr. Stock testified that schizophrenics have a poor tolerance for stress, and they need a lot of structure. (Tr. 61).

The ALJ asked Dr. Stock to assume that Claimant

with medication and therapy ... had the ability to follow one, two-step instructions in a low-stress environment, without a lot of social interaction, are there jobs that could be done? No physical limitations. Are there jobs that could be done if those are the only limitations I were to find?

(Tr. 61).  Dr. Stock opined that Claimant could still work as a dishwasher, factory assembler, and

a digital processor.  Dr. Stock explained that these jobs were all very simple jobs that were

repetitive in nature.  (Tr. 61).  Dr. Stock noted that the janitor job is rated one step higher.  (Tr.

62).  Dr. Stock testified that Claimant could work in housekeeping, and there are 10,000 such

jobs in Missouri and 400,000 in the national economy and the same availability for janitorial jobs.

With respect to the digital processor job, Dr. Stock testified there are 3,000 jobs in Missouri and

120,000 in the national economy.  Dr. Stock testified that there are 10,000 assembler jobs in

Missouri and 400,000 in the national economy.  (Tr. 62).  With respect to dishwasher jobs, Dr.

Stock noted there are 12,000 jobs in Missouri and 480,000 jobs in the national economy.  (Tr.

63).

> Next, the ALJ asked Dr. Stock to assume that
>
> Claimant was more disabled than I indicated in my first series of questions, that he
> would -- might be able to sustain employment for a short period of time, but then
> he would have problems, problems showing up on a day-in and day-out basis.
> Once he got there, were interactions with supervisors, he seems to have a pattern
> of not getting along with them.  So, if that would come up, he would have
> problems relating to them.  Would he be able to do these or any other jobs you're
> aware of in competitive settings?

(Tr. 63).  Dr. Stock opined that Claimant would not be able to perform any job in a competitive

setting assuming the second hypothetical.  (Tr. 63).

### 3.  Forms Completed by Claimant

In the Explanation of Determination, the disability examiner noted that the medical

evidence showed Claimant to be moderately limited in CCP and social functioning.  (Tr. 66, 68).

The examiner opined that due to Claimant's recent SGA work and reports of high function,

Claimant appears capable of simple work related tasks, and he retains the ability to perform his past work as a dishwasher. (Tr. 66, 68).

In the Disability Report - Field Office, the examiner noted that Claimant worked until May 1, 2006 at Express Scripts when the whole call center was laid off. (Tr. 159).

In the Disability Report - Adult - Third Party completed on September 3, 2007, Claimant's aunt reported Claimant "[g]oes about his daily activities as any one else would," and he takes care of his children one to two weekends each month. (Tr. 178-79). His aunt noted how Claimant's willingness to socialize and be around others has changed. (Tr. 179). His aunt listed dishwashing, sweeping, and mopping to be his household chores. (Tr. 180). His aunt noted that Claimant can drive and is able to use public transportation. (Tr. 181). Claimant shops for food and clothes once a week. (Tr. 181). His aunt listed working out and playing basketball as his hobbies. (Tr. 182). On a regular basis, Claimant goes to the gym and church. (Tr. 182). His aunt noted that she has not noticed any unusual behavior or fears in Claimant, and he has never been laid off or fired because of problems getting along with other people. (Tr. 184).

In the Work History Report, Claimant reported working in the call center at Express Scripts answering the phone, navigating through different computer screens, and educating customers. (Tr. 187-88).

In the Function Report - Adult dated September 3, 2007, Claimant reported his daily activities to include going to work if he is working and then working out or going to the library. (Tr. 195). Because Claimant takes the bus everywhere, he does a lot of walking. Claimant takes out the trash and washes the dishes every day. (Tr. 195). Claimant cares for his children on some weekends and fixes dinner, takes them on walks, and takes them different places on the bus. (Tr.

196).  Claimant reported not having any problems with personal care.  (Tr. 196).  Claimant makes his own meals and completes most household chores including laundry, washing dishes, mopping, and sweeping.  (Tr. 197).  Claimant reported getting out almost every day and using pubic transportation and shopping for food and clothes once a week for over one hour.  (Tr. 198). Claimant listed playing basketball and weight lifting as his hobbies.  (Tr. 199).  Claimant listed going to the gym, church, and friend's houses as his social activities.  (Tr. 199).  Claimant reported difficulty standing for long periods of time without feeling disoriented and concentrating. (Tr. 200).  Claimant reported never having been fired or laid off from a job because of problems getting along with other people.  (Tr. 201).  Claimant noted that he handles stress okay.  (Tr. 201).

In the Disability Report - Appeal, Claimant indicated that there have been no changes in his daily activities since he last completed a disability report.  (Tr. 219).

### 4. Additional Evidence

In the Fontbonne News, an article, <u>Theatre Department's New Production Looks Beyond "Hamlet"</u> dated February 26, 2010, discusses the production and lists Claimant as one of the cast members.  (Tr. 224).  In the Team Pride Basketball roster, Claimant is listed as one of the players on the basketball team.  (Tr. 225).

## III.    Medical Records

On August 24, 2007, a staff member at Hopewell Center completed an intake assessment. (Tr. 233).  The member noted that Claimant had been diagnosed with schizophrenia/bipolar disorder by Dr. Mudasani in 2002 and received treatment.  Claimant reported feeling depressed, hearing voices two to three times a day, and experiencing energetic sensations through his body.

The member noted Claimant to be scheduled for psychiatric evaluation. (Tr. 233). Claimant reported playing basketball and lifting weights as his recreational interests. (Tr. 237). The mental status evaluation showed Claimant's stream of thought and talk to be normal and coherent, his memory intact, good fund of knowledge, and good insight and limited/poor judgment. (Tr. 238). Claimant was diagnosed with schizophrenia, undifferentiated type. (Tr. 239).

On referral by disability determinations, Dr. Alison Burner completed a psychological evaluation on September 24, 2007. (Tr. 241-45). Claimant reported taking no medications. (Tr. 242). Claimant has not been hospitalized for psychiatric treatment. (Tr. 242). After becoming interested in spirituality in 1998, he started having spiritual experiences which at first were pleasurable but then turned bad. While at work, he became dizzy and pressure started to build in his head to the point he felt like his head exploded. Claimant started hearing voices. (Tr. 242). Claimant reported taking psychiatric medications, but none were effective. (Tr. 243). Claimant reported working as a dishwasher and a housekeeper, but he was fired from both positions in less than two months. Claimant reported working for almost two years in a call center, but he was fired from that position for bogus reasons. Dr. Burner observed Claimant's affect to be appropriate, and he appeared to be of above average intelligence. The mental status examination showed delusional beliefs to be evident. (Tr. 243). Claimant's insight and judgment were average. (Tr. 244). Claimant reported being able to care for himself and able to cook and clean. Based on her examination, Dr. Burner diagnosed Claimant with delusional disorder, and noted his psychiatric difficulty to be significant. Dr. Burner opined that Claimant's delusions would likely interfere with his ability to work noting that he had been fired from many jobs likely because of his odd or bizarre statements. Dr. Burner strongly recommended that Claimant receive psychiatric

treatment with medication although his firmly fixed delusions are often difficult to treat. Dr. Burner opined that Claimant's pace, persistence, concentration, and behavior would likely be outside normal limits. (Tr. 244).

On October 16, 2007, Dr. Gonzalez completed a psychiatric evaluation and prescribed Risperdal. (Tr. 263-64).

In the Mental Residual Functional Capacity Assessment dated October 16, 2007, Dr. Ricardo Moreno, Psy.D., found Claimant not be significantly limited in understanding and memory. (Tr. 246). With respect to sustained concentration and persistence, Dr. Moreno found Claimant to be moderately limited in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with others, and to complete a normal workday without interruption from psychologically based symptoms and not significantly limited in his ability to carry out short and simple instructions, to perform activities within a schedule, to sustain ordinary routine, and to make simple work-related decisions. (Tr. 246-47). With respect to social interaction, Dr. Moreno found Claimant to be moderately limited in his ability to interact appropriately with the general public and to get along with coworkers and peers and not significantly limited in his ability to maintain socially appropriate behavior. (Tr. 247). Dr. Moreno found Claimant not to be significantly limited in adaptation. (Tr. 247). Dr. Moreno opined that Claimant retains the ability to perform simple tasks with limited social interaction. (Tr. 248).

In the Psychiatric Review Technique dated October 16, 2007, Dr. Moreno diagnosed Claimant with schizophrenia and delusional disorder, persecutory type. (Tr. 249, 251). Dr. Moreno found Claimant's functional limitations to be none in restrictions of activities of daily

living and repeated episodes of decompensation and moderate in difficulties in maintaining social functioning and concentration, persistence, or pace. (Tr. 257). Dr. Moreno noted Claimant having jobs requiring contact with the general public including being a patient advocate and a cook and quitting these jobs on his own. (Tr. 259). Dr. Moreno noted that in the ADLs Claimant reported being able to care for his children, take the bus, clean, and perform household chores. Claimant reported being able to socialize and exercise. Based on the totality of the medical evidence, Dr. Moreno opined Claimant to be moderately limited in CCP and social functioning. Dr. Moreno found that based on Claimant's substantial gainful activity in the recent past and reports of high function on ADLs, Claimant is capable of simple work related tasks. (Tr. 259).

In the March 11, 2008 progress note at the Hopewell Center, a staff member noted calling Claimant to reschedule his missed appointment. (Tr. 265).

On referral by disability determinations, Dr. Paul Rexroat, Ph.D., completed a psychological evaluation on May 19, 2009. (Tr. 267-72). Claimant reported starting another janitorial job in two weeks with M & M Janitorial. (Tr. 267). Claimant reported receiving treatment at Hopewell Center on an irregular basis. (Tr. 268). Dr. Rexroat observed Claimant to be nicely dressed and groomed for the interview and to have a normal affect and speech. Claimant reported hearing voices giving him instructions starting ten years earlier. When he first heard the voices, they were unbearable, but Claimant reported now being able to deal with the voices. With respect to cognitive functioning, Dr. Rexroat found Claimant to be well oriented for person, place, time, and situation. (Tr. 268). With respect to social functioning, Claimant reported a relatively normal level of involvement with other persons and a range of activities. (Tr. 270). Dr. Rexroat found Claimant to be functioning in the average range of intelligence. With

respect to functional limitations, Dr. Rexroat found Claimant to be able to understand and remember simple instructions, to sustain concentration and persistence with simple tasks, and to interact socially and adapt to his environment. (Tr. 271). Claimant reported living in an apartment with a male friend and working doing odd jobs. Claimant cleans the apartment, does his laundry, and goes shopping for himself. Claimant uses public transportation and enjoys writing poetry and short stories. Claimant has a girlfriend and sees her three times a week when they visit each other or go out to eat. Dr. Rexroat opined Claimant to be able to sustain concentration, persistence, and pace with simple tasks. Dr. Rexroat diagnosed Claimant with schizophrenia, undifferentiated type, with auditory hallucinations and mild delusions. (Tr. 271).

In the Medical Source Statement of Ability to Do Work-Related Activities (Mental) completed on May 30, 2009, Dr. Rexroat found Claimant's ability to understand, remember, and carry out instructions not to be affected by his impairment noting Claimant to be functioning in the average range of intelligence. (Tr. 275). Dr. Rexroat opined that Claimant is moderately limited in his ability to interact appropriately with the public, supervisor, and coworkers and to respond appropriately to changes in a routine work setting. (Tr. 276). Dr. Rexroat noted that like any schizophrenic, under pressure Claimant could decompensate. (Tr. 276).

In the Annual/Intake Assessment of June 29, 2009, Claimant reported attending college at Fontbonne University and majoring in English. (Tr. 290). Claimant enjoys working out and playing basketball and is interested in obtaining additional skills in teaching with his English degree. (Tr. 291). Claimant reported being a good writer, a good student, and a good athlete. (Tr. 291). Ms. Brownridge observed Claimant's thought processes to be relevant and logical, and his speech to be relevant, appropriate, and exhibited some evidence of unusual ideations. (Tr.

292).  Ms. Brownridge noted Claimant to be very high functioning with respect to insight and judgment.  (Tr. 292).  Ms. Brownridge diagnosed Claimant with schizophrenia, undifferentiated type.  (Tr. 293).

In the Hopewell Center progress note of December 17, 2009, Claimant reported hearing voices all the time, but he has learned to ignore the voices.  (Tr. 287).  Claimant denied any complaints, and indicated that he is very optimistic and positive.  Claimant reported working out a lot.  The examiner noted Claimant's insight and judgment to be good and his mood and affect to be normal.  The treating source recommended referring Claimant for employment resources.  (Tr. 287).

On December 17, 2009, Kimberly Brownridge, LPC at Hopewell Center, completed a Mental Residual Functional Capacity Questionnaire.  (Tr. 281-85).  Ms. Brownridge noted treating Claimant with therapy to cope with hallucinations and other ways to function daily.  (Tr. 281).  In her prognosis, Ms. Brownridge opined that Claimant needs prolonged medication management and therapy, and through treatment, Claimant may become eligible to work at a regular job in the future.  (Tr. 281).  With respect to his mental abilities and aptitudes needed to do unskilled work, Ms. Brownridge found Claimant to be unable to meet competitive standards in working in coordination with others, performing at a consistent pace, and responding appropriately to changes in work routine; seriously limited but not precluded from remembering work-like procedures, maintaining regular attendance, sustaining an ordinary routine, making simple work-related decisions, completing a normal work day; accepting instructions, getting along with coworkers, and dealing with normal work stress; and limited but satisfactory in understanding and remembering short and simple instructions, carrying out short and simple

instructions, maintaining regular attendance, and being aware of normal hazards. (Tr. 283). Ms. Brownridge opined that Claimant is easily distracted by his hallucinations and delusions. (Tr. 283). With respect to mental abilities and aptitudes needed to do particular types of jobs, Ms. Brownridge found Claimant to be limited but satisfactory in interacting appropriately with the general public, maintaining socially appropriate behavior, and using public transportation. (Tr. 284).

## IV.     The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements of the Social Security Act through December 31, 2012. (Tr. 15). Claimant has not engaged in substantial gainful activity since May 1, 2006, the alleged onset date. (Tr. 15). The ALJ found that the medical evidence establishes that Claimant has the severe impairment of schizophrenia, undifferentiated type, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 15-16). The ALJ found that Claimant has the residual functional capacity to perform a full range of work at all exertional levels with the only nonexertional limitation being that Claimant perform low stress work. (Tr. 17). The ALJ determined that Claimant is able to perform past relevant work as a janitor as he performed the job. (Tr. 25). Claimant's birth date is September 7, 1975 and thus a younger individual on the alleged disability onset date. The ALJ noted Claimant has at least a high school education and is able to communicate in English. The ALJ opined that the transferability of jobs is not material to his determination inasmuch as the Medical-Vocational Rules supports a finding that Claimant is not disabled whether or not he has transferable job skills. (Tr. 25). Considering Claimant's age, education, work experience, and residual functional capacity, the ALJ found there to be jobs that

exist in significant numbers in the national economy that Claimant can perform.  (Tr. 26).  The ALJ found that Claimant was not under a disability from May 1, 2006, the alleged onset date, through the date of his decision.  (Tr. 27).

## V.   Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the individual is engaged in "substantial gainful activity."  If she is, then she is not eligible for disability benefits.  20 C.F.R. § 404. 1520(b).  If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant is not found to have a severe impairment, she is not eligible for disability benefits.  If the claimant is

found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The claimant's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the claimant's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d

1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at

730.  Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those

positions represents the agency's findings, the [Court] must affirm the agency's decision."

Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000).  See also Owen v. Astrue, 551 F.3d 792,

798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's

decision falls within the available zone of choice") (internal quotations omitted).

Claimant contends that the ALJ failed to hold a supplemental hearing after the admission

of additional evidence as required by HALLEX.  Next, Claimant argues that the ALJ's decision is

not supported by substantial evidence on the record as a whole, because the ALJ failed to

properly consider treatment compliance.  Claimant also contends that the ALJ failed to properly

assess his credibility.

A.     Supplemental Hearing

Claimant contends that the ALJ failed to hold a supplemental hearing after the admission

of additional evidence as required by HALLEX.  Claimant argues that the ALJ's failure to hold a

supplemental hearing violated the Social Security Administration's Hearings, Appeals, and

Litigation Law Manual ("HALLEX").[2]

In the letter of April 23, 2010, the ALJ apprised Claimant's counsel that he had secured

additional evidence from Fontbonne University, and he proposed entering the evidence in the

record.  (Tr. 226)  In relevant part, the ALJ apprised Claimant as follows:

> You may also request a supplemental hearing at which you would have the
> opportunity to appear, testify, produce witnesses, and submit additional evidence
> and written and oral statements concerning the facts and law.  If you request a

[2]HALLEX provides procedural guidance for processing and adjudicating claims at the hearing
and Appeals Council levels.

supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision.

***

**Actions I Will Take If I Do Not Hear From You**

If I do not receive a response from you within 10 days of the date you receive this notice, I will assume that you do not wish to submit any written statements or records and that you do not wish to request a supplemental hearing or to orally question the author(s) of the enclosed report(s). I will then enter the enclosed evidence in the record and issue my decision.

(Tr. 226-27).

In the letter of May 10, 2010, counsel thanked the ALJ for providing him with the opportunity to comment on the additional evidence from Fontbonne University and requested a supplemental hearing.[3] (Tr. 230). Counsel represents that her assistant called the ALJ's assistant and requested additional time to file a proffer response.[4] The record shows that the ALJ did not schedule a supplemental hearing as requested, but the ALJ issued an unfavorable decision dated May 19, 2010. (Tr. 10-28). The ALJ noted in his opinion as follows:

[S]ubsequent to the hearing an inquiry was undertaken on the internet as to any information relating to this claimant's background. The inquiry resulted in two informational responses. One indicated that he was involved in a play at Fontbonne University entitled "Looking beyond Hamlet" in which claimant is listed as a cast member. The other response indicated that a Terrence Lovett of Fontbonne was a member of a local St. Louis basketball team. These responses were proffered to claimant attorney as Exhibit E 15 pgs. 1-2. The reply to the proffer is contained in Exhibit E 18. Claimant's attorney did not deny that Exhibit E 15 referred to this claimant. These responses would suggest that claimant is

---

[3]The undersigned notes that the ALJ failed to address counsel's request in the May 10, 2010 letter for a supplemental hearing. Although the ALJ addressed Claimant's response to the proffer in the rationale of the written decision as required by HALLEX, the ALJ failed to address his request for a supplemental hearing. See id. at H.

[4]The undersigned notes that the Commissioner failed to address counsel's assertion regarding her assistant contacting the ALJ's assistant requesting additional time to file a proffer response within the ten-day time set by the ALJ.

involved in multiple activities that require a high level of both physical and mental capabilities.

(Tr. 24-25).

HALLEX I-2-7-1 provides that when an ALJ proposes to admit post-hearing evidence into the record, the ALJ "must proffer the evidence, i.e, give the claimant and representative the opportunity to examine the evidence and comment on, object to, or refute the evidence by submitting other evidence, requesting a supplemental hearing, or if required for a full and true disclosure of facts, cross-examining the author(s) of the evidence." 1993 WL 643048 (Sept. 2, 2005). HALLEX I-2-7-30(H) provides: "If the claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision." Id.

The undersigned notes that the Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX, other Circuits have, and there is a Circuit split. The Ninth Circuit found HALLEX to be an internal manual with no legal force. Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000) ("As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual.") (citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (holding that the SSA Claims Manual "has no legal force," and does not bind the Social Security Administration)); Blevins-Moore v. Barnhart, 2003 WL 21919191, at *3 (N.D. Ind. July 30, 2003) (finding that Federal Regulations control over HALLEX). In comparison, the Fifth Circuit found that although HALLEX does not carry the authority of the law, "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise be

required" and should prejudice result from a violation of an agency's internal rules, the result cannot stand.[5]  Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000) (quoting Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir. 1981)).  Likewise, the Third Circuit has opined that "HALLEX is an internal guidance tool and has no legal force."  Edelman v. Comm'r of Soc. Sec., 83 F.3d 68, 71 n.2 (3d Cir. 1996); Bordes v. Comm'r, 235 Fed. Appx. 853, 859 (3d Cir. 2007) (explaining that HALLEX does not carry the force of law because it provides internal guidance and not substantive rules).

The undersigned notes that there is a case from this District that has expressly considered this issue.  In Ellis v. Astrue, the Honorable Audrey Fleissig opined that "[t]his Court believes that the Eighth Circuit would hold that HALLEX does not have the force of law."  Ellis v. Astrue, 4:07cv1031AGF at 31 (Sept. 25, 2008) (citing Shontos v. Barnhart, 328 F.3d 418, 424 n.7 (8th Cir. 2003) (the Social Security Administration's Program Operations Manual Systems (POMS) guidelines do not have legal force and do not bind the Commissioner; still, an ALJ should consider them)).  Unlike in the instant case, the claimant in Ellis not only raised the violation of HALLEX by denying the request for a supplemental hearing, but also asserted a due process challenge to the procedures followed in the case.  The Ellis Court found that the claimant's due process rights were violated inasmuch as the process he was offered as a

_____

[5]The undersigned notes that 20 C.F.R. § 404.929(c) requires that the agency grant a claimant's request for a supplemental hearing when an ALJ proposes to revise a decision based upon evidence not included in the record on which the prior decision was based.  In the instant case, the ALJ had not yet issued a decision.  Thus the regulations do not grant a disability claimant the absolute right to a supplemental hearing in response to post-hearing evidence.

substitute to a supplemental hearing, submitting a concise brief addressing the pertinent issue, was inadequate. Id. at 35.

Even if the ALJ erred in not holding a supplemental hearing, the omission would be harmless error. Remand is only necessary where the ALJ's error jeopardizes the existence of substantial evidence to support the ALJ's decision, or where the ALJ applies the wrong legal standard. In this case, Claimant has failed to either show or allege any prejudice resulting from the ALJ's failure to hold a supplemental hearing. Further, Claimant has failed to proffer any evidence that could and would have been adduced during a supplemental hearing that would have led to a different result in this case.[6] See Newton, 209 F.3d at 459-60 (finding the claimant was not prejudiced by the violation of HALLEX provision requiring Appeals Council to consider new evidence where new evidence consisted of opinions not relevant to the claimed period of disability). Accordingly, the undersigned finds that the ALJ's failure to hold a supplemental hearing in violation of HALLEX I-2-7-30(H) which, as set forth above, provides that an ALJ who proposes to rely on post-hearing evidence must grant a claimant's request for a supplemental hearing "unless the ALJ received additional document evidence that supports a fully favorable decision" does not amount to reversible error.

B.      Treatment Compliance

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to properly consider treatment compliance.

---

[6]The undersigned notes that if Claimant was dissatisfied with the ALJ's reliance on the informational responses, Claimant could have submitted additional rebuttal evidence to the ALJ or the Appeals Council. Harris v. Barnhart, 2003 WL 21744230, at *2 (W.D. Va. July 28, 2003). The undersigned notes that a review of the record shows Claimant failed to submit any rebuttal evidence to the Appeals Council.

Social Security lists the circumstances under which "an individual's failure to follow prescribed treatment will be generally accepted as 'justifiable' and, therefore, such 'failure' would not preclude a finding of 'disability'...." SSR 82-59. Although none of the listed circumstances pertain to mental illness, federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the "result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse." Mendez v. Chater, 943 F.Supp. 503, 508 (E.D.Pa. 1996).

While the Eighth Circuit in Pate-Fires suggested that noncompliance with medication can be justified, it has since clarified its position holding that noncompliance by mentally ill claimants will only be justified when there is some evidence linking the mental illness to the repeated non-compliance. Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (if there is "overwhelming evidence in the record expressly indicating that the claimant's severe mental disorder caused [his] noncompliance with psychiatric medication," noncompliance with treatment should not be held against the claimant. The Wildman court also distinguished Pate-Fires on the ground there was evidence directly linking the claimant's mental impairments to her noncompliance with treatment. The undersigned finds Pate-Fires to be inapposite, and Claimant's noncompliance with treatment unjustified. There is evidence in the record that Claimant had been prescribed and was taking Risperdal. The instant record contains no evidence that Claimant's noncompliance is attributable to his schizophrenia.

In any case, the undersigned finds the ALJ primarily relied on Claimant's high level of functioning, not his noncompliance, to discredit his allegedly disabling psychiatric symptoms in making the credibility determination. The ALJ's ultimate finding that Claimant is not disabled is

supported by substantial evidence.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006).  In

his opinion, the ALJ discussed Claimant's failure to keep a scheduled appointment in March 2008

and not receiving frequent psychiatric treatment in one paragraph and then discussed in three

pages the other factors in support of his credibility determination.  Accordingly, the ALJ properly

weighed his lack of treatment against him in assessing Claimant's credibility.  See Partee v.

Astrue, 638 F.3d 860, 864 (8th Cir. 2011) (recognizing that failure to seek medical treatment for

mental illness is a permissible factor in determining that claimant did not suffer from a disabling

mental impairment).

C.    Credibility Determination

Claimant contends that the ALJ failed to properly assess his credibility.

The determination of Claimant's credibility is for the Commissioner, and not the Court, to

decide.  Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  The ALJ may not discredit

Claimant's complaints of pain solely because they are unsupported by objective medical evidence.

O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003); Jones v. Chater, 86 F.3d 823, 826 (8th

Cir. 1996); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted).

Instead, the ALJ must fully consider all of the evidence relating to the subjective complaints,

including the Claimant's work record, the absence of objective medical evidence to support the

complaints, and third party observations including treating and examining doctors as to:

1.    claimant's daily activities;

2.    duration, frequency and intensity of the pain;

3.    precipitating and aggravating factors;

4.    dosage, effectiveness and side effects of medication;

5.      functional restrictions.

Ford v. Astrue, 518 F.3d 979, 982 (8th Cir. 2008) (citing Polaski v. Heckler, 739 F.2d 1320,

1322 (8th Cir. 1984)).  The ALJ may disbelieve the claimant's subjective complaints "if there are

inconsistencies in the evidence as a whole."  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th

Cir. 2004).

When determining a claimant's complaints of pain, the ALJ may disbelieve such

complaints if there are inconsistencies in the evidence as a whole.  Polaski, 739 F.2d at 1322. The

ALJ must make express credibility determinations detailing the inconsistencies in the record that

support the discrediting of the claimant's subjective complaints.  Singh v. Apfel, 222 F.3d 448,

452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810,

813 (8th Cir. 1989).  "An ALJ must do more than rely on the mere invocation of Polaski to insure

safe passage for his or her decision through the course of appellate review."  Harris v. Shalala, 45

F.3d 1190, 1193 (8th Cir. 1995).   Where an ALJ explicitly considers the Polaski factors but then

discredits a claimant's complaints for good reason, his decision should be upheld.   Browning v.

Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).  However, the Eighth Circuit has held that an ALJ is

not required to discuss each Polaski factor methodically.  Brown v. Chater, 87 F.3d 963, 966 (8th

Cir. 1966).  The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment

and consideration of the factors before discounting the claimant's subjective complaints.  Lowe v.

Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown, 87 F.3d at 966.  The ALJ's credibility

findings are entitled to deference if the findings are supported by multiple valid reasons.  See Goff

v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005); Gregg v. Barnhart, 354 F.3d 710, 714 (8th

Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will

normally defer to credibility determination).  The undersigned finds that the ALJ's credibility

determination is supported by substantial evidence.   In his decision the ALJ thoroughly discussed

the reason for Claimant to stop working, his conflicting testimony, and his high level of

functioning, and the lack of medical evidence corroborating Claimant's inability to work.  See

Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's

subjective complaints of pain based on discrepancy between complaints and medical evidence,

inconsistent statements, lack of pain medications, and extensive daily activities).  The lack of

objective medical basis to support Claimant's subjective descriptions is an important factor the

ALJ should consider when evaluating those complaints.  See Stephens v. Shalala, 50 F.3d 538,

541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a

severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled

to find that the absence of an objective medical basis to support claimant's subjective complaints

was an important factor in evaluating the credibility of her testimony and of her complaints).  The

ALJ addressed other inconsistencies in the record to support his conclusion that Claimant's

complaints were not credible.

Specifically, the ALJ noted that no treating physician stated that Claimant was

disabled or unable to work during the relevant time period.  See Young v. Apfel, 221 F.3d 1065,

1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that

claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809

F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in

discrediting subjective complaints).  The lack of objective medical basis to support Claimant's

subjective descriptions is an important factor the ALJ should consider when evaluating those

complaints.  See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings

to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d

1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical

basis to support claimant's subjective complaints was an important factor in evaluating the

credibility of her testimony and of her complaints).  In addition, the ALJ noted that no physician

had ever made any medically necessary restrictions, restrictions on his daily activities, or

functional or physical limitations.  Likewise, the medical evidence is devoid of any evidence

showing that Claimant's condition has deteriorated or required aggressive medical treatment.  See

Id.; Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent

statements as a factor to consider in determining claimant's credibility).

Claimant reported to Dr. Rexroat that he had three janitorial jobs and hoped to start

another one.  See Lindsay v. Astrue, No 08cv892GAF, 2009 WL 2382337, at *3 (W.D. Mo. July

30, 2009) ("Plaintiff reported looking for work and contacting temporary agencies.  These

statements are inconsistent with disability and indicate that Plaintiff did not view his pain as

disabling.").  "'[A]cts which are inconsistent with a claimant's assertion of disability reflect

negatively upon the claimant's credibility.'"  Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir.

2010) (quoting Heino v. Astrue, 578 F.3d 873, 881 (8th Cir. 2009)).  Such acts include looking

for work.  See Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995) ("[T]his record of

contemplating work indicates [the claimant] did not view his pain as disabling.").  Absent a

showing of deterioration, working after the onset of an impairment is some evidence of an ability

to work.  See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005); Depover v. Barnhart, 349

F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not

unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Weber v. Barnhart, 348 F.3d 723, 725 (8th Cir. 2003) (noting that claimant left her job due to lack of transportation, not due to disability). Likewise, the ALJ discussed how Claimant did not leave his job in the calling center because of his impairment, but because he was laid off. Medhaug v. Astrue, 578 F.3d 805, 816-17 (8th Cir. 2009); Goff, 421 F.3d at 793 (explaining it is "relevant to credibility when a claimant leaves work for reasons other than [his] medical condition."); see also Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003); Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility). The ALJ also discussed how Claimant provided conflicting testimony regarding how he was laid off from his job at the call center. At the hearing, Claimant testified how he had been laid off. But, during the evaluation with Ms. Burner, Claimant noted he had been fired for bogus reasons. See Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (an ALJ may discredit claimant based upon statements that conflict with other record evidence). It is well-established that the ALJ is permitted to consider inconsistencies in the evidence and the extent to which there are conflicts between a claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4).

Claimant's activities of daily living provide further support of the ALJ's credibility determination. Claimant reported his daily activities to include making his own meals, walking, using public transportation, exercising, shopping, attending classes, and taking care of his children on the weekends. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). Claimant noted having a number of friends and a girlfriend, going out on dates, and

spending time on the weekends with his five children. Claimant further reported attending college part time and hoping to start a new janitorial job. Thus, the ALJ had a sufficient basis for discounting Claimant's credibility.

Finally, the ALJ noted that Claimant's earnings record undermined his credibility regarding the severity of his impairments alleged and his overall motivation to work versus motivation for benefits inasmuch as his record documents a scattered and somewhat erratic work record. A consistent work record supports a claimant's credibility, see Hutsell v. Massanari, 259 F.3d 707, 713 (8th Cir. 2001); conversely, an inconsistent work history does not, see Frederickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004); Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002); see also Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2002) (a poor work history "may indicate a lack of motivation to work, rather than a lack of ability.").

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court. Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996).

Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence). Those included Claimant's reason to stop working, his conflicting testimony, and his high level of functioning, and the lack of medical evidence corroborating Claimant's inability to work. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) (affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain). The

undersigned finds that substantial evidence supports the ALJ's finding the medical records do not support the extent of Claimant's subjective complaints of head pain and hearing voices. See Flynn v. Astrue, 513 F.3d 788, 792 (8th Cir. 2008) (standard of review; substantial evidence is enough that reasonable mind might accept it as adequate to support decision).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY RECOMMENDED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE


Dated this _6th__ day of July, 2012.